## JOHNSON *v.* WATSON *et al.*

"The beds of streams not navigable belong to the owner of the adjacent land; if the stream of water is the dividing line, each owner is entitled to the thread or center of the main current." This quotation is taken from our statute law. Applying it to the facts of this case, there was

evidence which would have authorized the jury to find for the plaintiff, and the court erred in granting a nonsuit.

No. 3828. January 18, 1924.

Equitable petition. Before Judge Wright. Floyd superior court. April 12, 1923.

*M. B. Eubanks,* for plaintiff.

*Harris & Harris,* for defendants.

Beck, P. J. Mrs. J. Lindsey Johnson brought her equitable petition against N. G. Watson and Mrs. W. L. Hume, alleging that she is the owner of a described tract of land, the boundaries of which are set forth. One of the boundaries, that on the north, is the Etowah river. It is alleged that on the north side of the land of plaintiff there is a valuable deposit of sand and gravel, used for building purposes; that the defendant Watson, through some arrangement with Mrs. Hume, daily enters upon the property and removes therefrom large quantities of sand and gravel, without the consent of petitioner. The land is of the value of $1 per cubic yard. Defendant Watson has been given notice to desist from such trespasses, but continues to trespass. Plaintiff sets forth various conveyances upon which her title rests. Her prayers are for damages in a stated sum, and for injunction. At the trial the plaintiff introduced evidence to support the allegations of the petition. At the conclusion of plaintiff's evidence the court granted a nonsuit, and the plaintiff excepted.

The island or sandbank, the title to which is in question here, is in the Etowah river, and, according to the testimony of certain witnesses, on the side of the thread of the stream next to the property of the plaintiff. After the building of a dam in the river below the island the part of the stream between the island and the other land of the plaintiff gradually filled up, so that the island connects with the shore of the stream. It had always been comparatively shallow between the island and the shore, and the deposit of sand and silt gradually rose above the level of the water when the water was at its usual level; so that there was a strip of land or sand connecting the island with the shore. So, under the facts stated, Mrs. Johnson was the owner of the island, under conveyances of the adjacent land which call for a boundary on the north by the stream. Section 3630 of our code is as follows: "The beds of streams not navigable belong to the owner of the adjacent

land; if the stream of water is the dividing line, each owner is entitled to the thread or center of the main current; if the current change gradually, the line follows the current; if from any cause it takes a new channel, the original line, if capable of identification, remains the boundary. Gradual accretions of land on either side accrue to the owner." As to the title to islands in streams of water which are the boundaries of land, see notes to the cases of City of Chicago v. Ward, 38 L. R. A. 850, and Holman v. Hodges, 58 L. R. A. 672. If the island or sandbank had been on the other side of the thread or center of the main current, it would have belonged to the owner of the adjacent land on the other side of the stream. It is shown by the evidence that the Etowah river is a non-navigable stream. The trespasses in this case are of such character as would authorize the court to prevent their repetition by injunction. It is doubtful whether or not the damages could be estimated, in view of the character of the property in question and the way in which it was taken. Besides, a multiplicity of suits will be avoided by determining the rights of the parties in this case.

There is some evidence that the defendant Watson has been taking this sand for thirty or forty years; but the evidence is not such as to require a holding by the court that he had acquired a prescriptive title to the land.

It is insisted that under the evidence of Mrs. Johnson herself it is shown that the title to the property was not vested in her at the time of bringing the suit. The mere fact that there was an outstanding security deed made to secure a debt will not prevent the owner from protecting her property by an appeal to the courts of equity to prevent trespasses of the character of those alleged to have been committed by the defendant Watson, and of which there is some proof. It is further insisted that under the evidence it is shown that this property has been conveyed to a realty company. The only evidence upon that subject is the testimony of plaintiff herself, which is, in regard to this point, as follows: "In the last year I executed a deed to the Adair Realty Company. I had them take charge of my property and take care of it for me and keep the rascals from stealing it from me. They are acting as my agents. I did not borrow money from them; just as they collect the money they pay it out." This evidence does not show that the plaintiff had executed a conveyance to the Adair Realty Company which

divested her of all interest in the land, and there is nothing further in this testimony quoted to show the character of the deed, nor the purpose for which it was executed. The plaintiff should not have been nonsuited, but the case should have been submitted to the jury under proper instructions from the court.

*Judgment reversed. All the Justices concur.*